IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2018 Session

## AMY ELIZABETH LUKER v. TERRY EUGENE LUKER

**Appeal from the Chancery Court for Williamson County**
**No. 46595      Robert E. Lee Davies, Senior Judge**

_____

### No. M2018-00138-COA-R3-CV

_____

Amy Elizabeth Luker ("Petitioner"), asserting she was raped, obtained an *ex parte* order of protection against her husband Terry Eugene Luker ("Respondent") in the Chancery Court for Williamson County ("the Trial Court"). Respondent asked for time to conduct discovery before the hearing on whether to extend the order of protection. The Trial Court permitted Respondent to subpoena certain records but otherwise ruled he had no right to conduct discovery under the Tennessee Rules of Civil Procedure. After a hearing, the Trial Court ruled in favor of Petitioner and extended the order of protection. Respondent appeals, arguing principally that the Trial Court erred in blocking discovery and in excluding Respondent's proposed witnesses. We affirm the Trial Court in its decision regarding the witnesses. However, we hold that the Trial Court erred in determining categorically that Respondent had no right to conduct discovery. We vacate and remand for a new hearing. On remand, the parties shall state specifically what discovery if any they want and the Trial Court is to exercise its discretion in deciding what limited discovery to allow and the time frame. The *ex parte* order of protection shall remain in effect in the interim. We affirm, in part, and vacate, in part, the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in Part, and Vacated, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Nathan Scott Luna, Murfreesboro, Tennessee, for the appellant, Terry Eugene Luker.

Sean R. Aiello, Franklin, Tennessee, for the appellee, Amy Elizabeth Luker.

# OPINION

## Background

In November 2017, Petitioner and Respondent were in the midst of divorce proceedings. The two continued to reside together in the marital residence, albeit in different rooms. Following the signing of the marital dissolution agreement, the divorcing couple had consensual sexual relations some number of times.

The event giving rise to this appeal occurred on November 14, 2017, when Petitioner alleges she was raped by Respondent. The two parties put forward contrasting accounts of what happened. Respondent's theory of the case throughout has been that there was no rape and that Petitioner and her sister conspired to set him up. In Respondent's account, he and Petitioner had consensual sex and afterward, when Respondent denied Petitioner's request for money, she flew into a rage and accused him of rape. According to Petitioner, she did not want to have sex with Respondent on this occasion and expressed this to him, but he proceeded to rape her.

On November 16, 2017, Petitioner filed a petition for order of protection in the Trial Court. A temporary, *ex parte* order of protection was entered against Respondent. The case was set for December 1. On November 30, 2017, Respondent filed a motion to continue in order to request discovery. The Trial Court entered an order granting Respondent's motion in part, stating as pertinent:

> After argument by counsel and review of the record as whole, the Court **GRANTS IN PART** Husband's *Motion to Continue Hearing* on the express grounds of due process. While the Court understands the legislative intent to provide domestic abuse victims with enhanced protection which includes expedient and summary hearings under the Domestic Abuse Act, the Court finds that Husband needs additional time to marshal his defense and proof for this proceeding and issue subpoenas. In balancing these competing interests, the Court finds that it should grant Husband a brief continuance in this matter but denies his request to conduct discovery in these proceedings prior to final hearing on Wife's *Petition for Order of Protection and Order for Hearing*.
>
> ***
>
> 1. The Court **GRANTS IN PART** Husband's *Motion to Continue Hearing.* Wife's hearing on *Petition for Order of Protection and Order for Hearing* is continued until December 21, 2017, at 1:00 p.m. Husband,

however, does not have the right to conduct discovery under the Tennessee Rules of Civil Procedure during this continuance and shall conduct no depositions and issue no interrogatories, requests for production, or requests for admission to Wife. The Court's *Ex Parte Order of Protection* previously issued on November 16, 2017, shall remain in full force and effect pending further order of this Court.

On December 8, 2017, the Trial Court conducted a telephonic hearing regarding the scope of subpoenas. The Trial Court entered an order stating, in part, as follows:

1. Respondent can subpoena Petitioner to bring to the December 21, 2017, hearing the following items: copies of all written communications between Petitioner and her sisters for the time period of June 1, 2017 to November 30, 2017, written communications to include emails, texting, messaging, notes and letters; copies of all written communications with law enforcement regarding the allegations contained in the *Petitioner's Order of Protection and Order for Hearing*, written communications to include emails, texting, messaging, notes and letters; a copy of Petitioner's call logs for the time period of June 1, 2017 to November 30, 2017; and a copy of the recording referenced by Petitioner in her *Order of Protection and Order for Hearing*.
2. Counsel for the parties shall meet at the Court prior to the hearing in order for counsel for the Petitioner to give counsel for the Respondent the above referenced items so she may review the same and so as not to cause delay of the hearing.
3. Petitioner may file a written motion to appeal this Order.

On December 18, 2017, Petitioner filed a motion to quash, arguing that the issuance of a subpoena duces tecum under Tenn. R. Civ. P. 45.02 was an improper means for seeking documents or digital files from an opposing party.

On December 21, this case was heard on its merits. As an initial matter, the Trial Court denied Petitioner's motion to quash. Respondent made an oral motion to dismiss on the basis that his counsel had only two hours before the hearing to review an hour and a half recording (consisting of the parties speaking after the incident) as well as call logs. Respondent also alleged that Petitioner failed to produce all the subpoenaed material. The Trial Court denied Respondent's motion to dismiss and the hearing proceeded. Respondent and Petitioner both testified to their different accounts.

Respondent proposed calling as additional witnesses: (1) an appraiser and his wife who were scheduled to come to the marital residence later in the morning on the day of

the incident for the purpose of demonstrating that Respondent would not invite company over if he intended to rape his wife; and, (2) Respondent's therapist, for the purpose of shedding light on Respondent's mental state. The Trial Court declined to allow these proposed witnesses to testify, concluding that the appraiser and his wife could add nothing relevant and that the therapist's testimony did not fit under a hearsay exception. The Trial Court did, however, hear statements from the therapist in the form of an offer of proof.

The Trial Court found in favor of Petitioner and extended the order of protection. In January 2018, the Trial Court entered its order on the extension, stating as follows:

> This matter came to be heard on December 21, 2017 before the Honorable Robert E. Lee Davies for a final hearing on Amy Luker's (hereinafter "Wife") *Petition for Order of Protection*. After preliminary argument by counsel and review of the record as whole, the Court **DENIES** Wife's *Motion to Quash* the December 8, 2017 subpoena issued by Terry Eugene Luker (hereinafter "Husband") and **DENIES** Husband's oral motion to dismiss with prejudice. Following a hearing on the merits, argument of counsel, testimony and cross-examination of Wife, Husband, and Catherine Mosley [Petitioner's sister], and a review of the record as a whole, the Court finds by a preponderance of the evidence that on the morning of November 14, 2017 Husband committed an act of sexual assault on Wife and therefore **GRANTS** Wife's *Petition for Order of Protection* extending the order of protection for a period of one (1) year pursuant to Tenn. Code Ann. § 36-3-605. In support thereof, the Court finds as follows:
>
> 1. The Parties have a complicated relationship in which Wife clearly loves her husband and Husband clearly cares for Wife. For whatever reason, however, Husband continued to have affairs which has made the Parties' relationship very complicated and contributed to the breakup of their marriage.
>
> 2. In the context of their divorce proceedings, the Parties have entered into and signed a *Marital Dissolution Agreement* and *Permanent Parenting Plan* as a result of a mediation that took place on October 23, 2017. At that point, the Parties were still very torn and upset by following through on the divorce and held conflicting feelings for each other. Even though they had agreed to formally part ways, they continued to have sexual relations after signing the *Marital Dissolution Agreement*. The Court finds it immaterial whether the Parties had such relations only twice, as testified to by Wife, or up to six times, as testified to by Husband.

Regardless, the Court finds that those instances of sexual relations were consensual.

3. On November 13, 2017, the testimony and evidence show that Wife may have been upset with Husband concerning his alleged continued communication with a co-worker with whom he had previously had an affair. The Court finds, however, that Wife was really upset concerning certain aspects of the divorce decree and especially her obligation for the final amount of her attorney's fees which were more than initially anticipated as well as other costs incidental to the divorce.

4. While Wife was upset with Husband concerning these matters, the Court finds that Wife was primarily upset with her former counsel, regarding her representation of her. As a result of Wife's frustration with her former attorney, she sent her an email sometime after 6:30 p.m. on the evening of November 13, 2017 while Husband was absent from the marital residence taking care of his grandchildren. The Court finds that this email was logical and well-reasoned and that Wife raises what she believes were legitimate concerns about why her final bill was so high. The Court does not believe that this email was written by a woman out of control as contended by Husband.

5. Later on the night of November 13, 2017, there is no dispute that the Parties temporarily reconciled. As a result, the Parties resolved any differences they may have had at that particular point. That night, after Husband laid down on his bed, Wife sat down on the side of the bed and they had a civil discussion, at the conclusion of which Wife left to sleep in her separate bedroom.

6. On the morning of November 14, 2017, Wife woke up when hearing Husband leave the house. As a result, Wife sent Husband an innocuous text message saying "You didn't say goodbye." The Court places no weight on the fact that Wife sent this message, finding it neither supports or diminishes either of the Parties' positions.

7. Husband returned to the marital residence that morning, entered Wife's separate bedroom uninvited, and got into bed with Wife. The Court finds that Husband entered the bedroom uninvited, but that Wife did not tell Husband "no" when Husband got into bed with her. At this point, Husband tried to initiate sexual relations with Wife. The Court finds that there was not anything wrong with this initial interaction at that point considering the circumstances that the Parties were living in up to that point in time.

8. Wife, however, at that point objected to Husband's sexual advances, and Husband did not stop. There was a gradual sexual progression by Husband, and, even though Wife repeatedly protested, Husband did not stop. Husband eventually took off Wife's clothes against

-5-

her will, and forced himself upon her, and the Court finds that Husband sexually assaulted Wife.

9. The Court finds that there was no conspiracy to fabricate this event as alleged by Husband between Wife and her sister, Catherine Mosley, whom the Court finds to be credible in all respects.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED AS FOLLOWS**:

1. The Court **GRANTS** Wife's *Petition for Order of Protection* extending the order of protection for a period of one (1) year from the date of final hearing pursuant to Tenn. Code Ann. § 36-3-605. Under this order of protection, Husband shall have no physical contact with Wife for the duration of the order. This order, however, shall have no effect on the Parties' October 23, 2017 *Permanent Parenting Plan*. To that end, under this protective order Husband shall be permitted to communicate with Wife via text and email only on issues pertaining to their son . . . . Likewise, the Court places no restriction on Husband's ability to communicate freely with [his son] and places no restrictions on Husband's ability to be around his son.

2. Husband shall not possess firearms of any kind during the duration of this order of protections.

3. Wife shall turn over to Husband possession of the Parties' marital residence . . . . no later than 5:00 p.m. December 22, 2017.

4. Wife is awarded a judgment [in the amount of $9,450.00][1] for which execution may issue for her attorney's fees associated with the filing, issuance, hearing, obtaining, and enforcing the ex parte order of protection and petition for order of protection in an amount to be determined pursuant to Tenn. Code Ann. § 36-3-617. Counsel for Wife shall submit to the Court an Affidavit of Attorney's Fees setting for [sic] those related fees. Should Husband have objection to the requested fees, he shall file the same with the Court.

(Footnote added). Respondent timely appealed to this Court. Respondent filed a motion in the Trial Court to stay execution on the judgment for attorney's fees, which was granted by the Trial Court pursuant to Tenn. R. Civ. P. 62.

## Discussion

We restate and consolidate, as dispositive, the issues Respondent raises on appeal as follows: 1) whether the Trial Court erred in excluding certain of Respondent's

---

[1] This figure was handwritten along with the Judge's initials.

proposed witnesses; and, 2) whether the Trial Court erred in denying categorically Respondent's request for discovery under the Tennessee Rules of Civil Procedure. Petitioner raises her own issue of whether, pursuant to Tenn. Code Ann. § 36-3-617(a), she should be awarded her attorney's fees and costs incurred in defending this appeal should she prevail.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Concerning evidentiary issues, "[t]he appellate court affords the trial court wide discretion regarding the admissibility of evidence and will not overturn the trial court's determination absent an abuse of that discretion." *Goodale v. Langenberg*, 243 S.W.3d 575, 587 (Tenn. Ct. App. 2007). Regarding pretrial discovery, "[t]he applicable standard of review . . . is abuse of discretion." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015). In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).
>
> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision.

*State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

We first address whether the Trial Court erred in excluding certain of Respondent's proposed witnesses. Respondent asserts these witnesses were excluded wrongly: (1) an appraiser and his wife; (2) Respondent's therapist; and (3) a police detective who worked on the case. Respondent submits that his substantial right to put on proof under Tenn. R. Evid. 103(a) was affected by these exclusions. Initially, we observe that the Trial Court did not exclude the police detective because Respondent never actually offered her as a witness, so we may dispense with that aspect of Respondent's argument.[2]

---

[2] Respondent states that the police detective could have testified to investigating the rape allegations for over a month without making an arrest. We do not see how "no arrest" would be relevant in this hearing.

With respect to the appraiser and his wife, Respondent argues that his inviting them over suggests, somehow, that he did not rape Petitioner because he would not be amenable to having guests over after a rape. Laying aside the dubious assumptions there, no one disputes that the appraiser and his wife were scheduled to come over. Petitioner concedes this. It would be pointless for the appraiser and his wife to testify that they were scheduled to show up when that is an uncontroverted fact.

Regarding Respondent's therapist, the Trial Court heard her statements as an offer of proof. Respondent states that the therapist could corroborate his existing mental, physical, and emotional condition regarding the parties' sex life. The Trial Court ruled this was hearsay and did not fit under the hearsay exception at Tenn. R. Evid. 803(3).[3] Respondent makes no argument on appeal as to how the Trial Court erred as it relates to this rule, which was the basis for the Trial Court's decision. We, therefore, affirm the Trial Court in its exclusion of Respondent's proposed witnesses.

We next address whether the Trial Court erred in denying categorically Respondent's request for discovery under the Tennessee Rules of Civil Procedure. Respondent essentially argues that he was rushed into a hearing without adequate time or opportunity to develop his case. Petitioner, in response, argues that the Domestic Abuse Act contemplates quick, summary proceedings for the benefit of victims, and that allowing ordinary discovery would undermine that goal. Tenn. Code Ann. § 36-3-605(a) & (b) provide as follows:

> (a) Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of protection. An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.

> (b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued

---

[3] Hearsay exception providing: "(3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period. Any ex parte order of protection shall be in effect until the time of the hearing, and, if the hearing is held within fifteen (15) days of service of such order, the ex parte order shall continue in effect until the entry of any subsequent order of protection issued pursuant to § 36-3-609....

Tenn. Code Ann. § 36-3-605(a) & (b) (2017).

The legislative intent of the statutes providing protection from domestic abuse is set forth specifically by the legislature in Tenn. Code Ann. § 36-3-618 (2017), which states:

The purpose of this part is to recognize the seriousness of domestic abuse as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse. A further purpose of this chapter is to recognize that in the past law enforcement agencies have treated domestic abuse crimes differently than crimes resulting in the same harm but occurring between strangers. Thus, the general assembly intends that the official response to domestic abuse shall stress enforcing the laws to protect the victim and prevent further harm to the victim, and the official response shall communicate the attitude that violent behavior is not excused or tolerated.

In *Kite v. Kite*, 22 S.W.3d 803 (Tenn. 1997), our Supreme Court applied the rules of statutory construction to ascertain the legislative intent of Tenn. Code Ann. § 36-3-605(b). The issue in *Kite* was whether the ten day time period in which a hearing must be conducted after service of an *ex parte* order of protection was jurisdictional or simply intended to limit the duration of the *ex parte* order[1]. The respondent argued that when a hearing was not conducted within ten days as required by the statute, the trial court was divested of jurisdiction. *Id*. at 804. The petitioner argued that when a hearing was not conducted within ten days of service, the *ex parte* order expired but the trial court retained jurisdiction and could still issue an order of protection. *Id*. Our Supreme Court, after quoting the legislative intent set forth in Tenn. Code Ann. § 36-3-618, *supra,* concluded that the legislative intent of the statute was to (1) provide enhanced protection to the victims of domestic abuse; (2) promote uniform law enforcement intervention regardless of whether the crime was domestic or committed by strangers; and (3) communicate a position of intolerance to domestic abuse perpetrators. *Id*. at 805. In

---

[1] Tenn. Code Ann. § 36-3-605(b) has since been amended to require a hearing within 15 days of service of the *ex parte* order of protection.

determining that the ten day time period in which to conduct a hearing was not jurisdictional, our Supreme Court stated that the legislature's use of the term "enhanced protection" in Tenn. Code Ann § 36-3-618 was significant. The Court then stated:

> The present statute mandates a hearing within ten days of service of an *ex parte* protective order. Tenn. Code Ann. § 36-3-605(b). The ten-day period, therefore, commences upon the service of an *ex parte* protective order on the respondent. If *ex parte* relief is not granted, commencement of the ten-day period will not be triggered. Accordingly, the legislative mandate of a hearing within ten days is applicable only when *ex parte* relief has been issued. We find it illogical that the legislature intended to create a jurisdictional bar to be applied exclusively to those petitioners demonstrating cause, immediate and present danger of abuse, for *ex parte* relief. . . . We shall interpret the legislature's intention of the ten-day requirement consistent with their stated policy of providing enhanced protection. . . . The prompt hearing requirement limits the potential for abuse by protecting respondents from possible ongoing frivolous or retaliatory *ex parte* protective orders. The ten day hearing requirement is, therefore, merely a limitation on the duration of an *ex parte* protective order.

*Kite*, 22 S.W.3d at 805-06.

As opposed to the scenario in *Kite*, Respondent does not argue that the Trial Court lost jurisdiction because the hearing was conducted after the statutory time limit of 15 days. In fact, Respondent seeks additional time in which to conduct discovery pursuant to the Tennessee Rules of Civil Procedure and accepts that the *ex parte* order of protection will remain in effect until the hearing because the delay is at his request. Petitioner argues in response that a trial court is forced to make the difficult choice to either conduct a hearing within 15 days, ready or not, or delay the hearing beyond 15 days and let the *ex parte* order dissolve leaving the alleged domestic abuse victim with no court-ordered protection. For reasons we will discuss, we disagree with Petitioner that a trial court is forced by the statute into such a choice.

In the present case, the Trial Court attempted to find a middle ground. The Trial Court extended, impermissibly in Petitioner's eyes, the *ex parte* order of protection for 20 days. However, the Trial Court restricted discovery to the issuance of a subpoena duces tecum pursuant to Tenn. R. Civ. P. 45.02. Petitioner argues that Tenn. R. Civ. P. 34 is the appropriate method for obtaining documents from an opposing party all while agreeing with the Trial Court that Respondent has no right to avail himself of any discovery under the Tennessee Rules of Civil Procedure, including Rule 34. Meanwhile, Respondent

protests the categorical denial of his right to the full range of discovery under the Tennessee Rules of Civil Procedure. Neither party was satisfied with the compromise.

The end result, unfortunately, was a rushed hearing. Perhaps the most illustrative problem with this case is that Respondent's counsel had two hours before the hearing to review a one and a half hour recording, along with call logs produced pursuant to the subpoena duces tecum. We believe it impractical to expect a lawyer to review call logs and listen to a one and a half hour recording two hours before a hearing and be adequately prepared for that hearing. What if the recording or call logs opens additional lines of inquiry? What if there is a problem with the audio, requiring multiple attempts to hear? This simply was not meaningful discovery. Had Petitioner's position on appeal been adopted and the case was slotted arbitrarily into a 15 day window, Respondent never would have had an opportunity to review the evidence at all. We cannot accept that the General Assembly, or the *Kite* court, envisioned this sort of detrimental haste.

The 15 day limit for *ex parte* orders of protection under the Domestic Abuse Act and *Kite* is, in our judgment, designed to protect a respondent and not a petitioner. As stated by our Supreme Court in *Kite*, "[t]he prompt hearing requirement limits the potential for abuse by protecting respondents from possible ongoing frivolous or retaliatory *ex parte* protective orders." *Kite*, 22 S.W.3d at 806. After all, upon service of an *ex parte* order of protection, a petitioner already has what he or she wants—immediate court ordered protection from the alleged offender. "The legislature apparently inserted this requirement [the then ten-day hearing requirement] to insure a prompt hearing to determine the validity and necessity of the *ex parte* relief." *Id*. Therefore, the statutory dissolution of that *ex parte* order after 15 days serves to help only a respondent by expediting the matter and allowing him or her to bring a speedy resolution of the petition. We, however, see no barrier under the Domestic Abuse Act to a respondent, such as in this case, requesting that the hearing be put off for some definite and limited period of time so he or she can request reasonable discovery, subject to the trial court's management, with the proviso that the *ex parte* order of protection remains in place until that hearing. In other words, the 15 day limit to an *ex parte* order of protection may not be used offensively to ambush a respondent, the very party the 15 day limit is intended to protect. What cannot be forgotten is that prior to the hearing to determine whether the *ex parte* order is to be dissolved or extended, a respondent is accused of being but is not yet found to be an abuser. Consistent with the Domestic Abuse Act and *Kite*, it is only a respondent who has the ability to request that the hearing be postponed to allow for discovery with the *ex parte* order of protection remaining in effect. A petitioner cannot extend the *ex parte* order of protection beyond the 15 day limit by requesting discovery. However, if the 15 day period is extended and the *ex parte* order remains in effect because of a request for discovery by a respondent, a petitioner likewise is allowed reasonable discovery as determined by a trial court in its discretion.

Nothing in our research supports the proposition that discovery under the Tennessee Rules of Civil Procedure is prohibited in order of protection cases. The Trial Court had the discretion to manage discovery but did not exercise its discretion. Rather, the Trial Court concluded summarily that Respondent had no right to conduct discovery pursuant to the Tennessee Rules of Civil Procedure, which we hold was error. Our holding comports with *Kite* and the Domestic Abuse Act in that it ensures continuity of enhanced protection for the alleged victim while also preventing the kind of frantic case disposition seen here. While not a criminal matter, an order of protection exposes a respondent to an array of restrictions, including severe limitations on his or her Second Amendment rights. A respondent deserves a meaningful due process opportunity to present his or her case.

We, therefore, vacate the judgment of the Trial Court extending the order of protection against Respondent. We remand for a new hearing. On remand, the Trial Court is to exercise its discretion to determine the parameters of discovery. The parties must state what discovery, if any, they want. The Trial Court then must exercise its discretion as to what discovery to allow and the time frame. In the meantime, the *ex parte* order of protection shall remain in effect through the new hearing, at which point it will be dissolved or extended. We take absolutely no view as to the underlying merits of this matter.

The final issue we address is Petitioner's issue of whether she should be awarded her attorney's fees and costs incurred in defending this appeal. Regarding attorney's fees and costs for domestic abuse victims, Tenn. Code Ann. § 36-3-617 provides:

(a)(1) Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim or sexual assault victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing on the petition, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.

(2) If the court does not issue or extend an order of protection, the court may assess all court costs, filing fees, litigation taxes and attorney fees against the petitioner if the court makes the following finding by clear and convincing evidence:

(A) The petitioner is not a domestic abuse victim, stalking victim or sexual assault victim and that such determination is not based on the fact that the petitioner requested that the petition be dismissed, failed to attend the hearing or incorrectly filled out the petition; and

(B) The petitioner knew that the allegation of domestic abuse, stalking, or sexual assault was false at the time the petition was filed.

Tenn. Code Ann. § 36-3-617(a) (2017). Because we vacate the Trial Court's order refusing Respondent any real discovery and extending the order of protection, and, as the matter will be considered afresh at a new hearing below, we decline to grant Petitioner an award of attorney's fees and costs.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and vacated, in part, and this cause is remanded to the Trial Court for collection of the costs below and for further proceedings consistent with this Opinion. Exercising our discretion and consistent with the Domestic Abuse Act, the costs on appeal are assessed against the Appellant, Terry Eugene Luker, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE