IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 18, 2022 Session

**LAUREN FRONTZ v. TRISTAN J. HALL**

**Appeal from the Circuit Court for Knox County**
**No. 149454     Gregory S. McMillan, Judge**

_____

**No. E2021-00154-COA-R3-CV**

_____

Lauren Frontz ("Petitioner") filed a petition for an order of protection against her ex-boyfriend Tristan J. Hall ("Respondent") on July 31, 2020. The trial court granted an *ex parte* order of protection and set a hearing for ten days later. Several bridging orders were subsequently entered by the trial court extending the length of time for the protective order. Petitioner alleged Respondent was guilty of criminal contempt by violating the order of protection. After a hearing, the trial court found Respondent guilty on five counts of criminal contempt and sentenced him to fifty days in jail. The trial court also awarded Petitioner her attorney's fees in the amount of $77,525.75. Respondent appeals, arguing that the bridging orders were invalid and that the trial court erred in its award of attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Darren V. Berg, Knoxville, Tennessee, for the appellant, Tristan J. Hall.

Michael S. Kelley and A. Reece Brassler, Knoxville, Tennessee, for the appellee, Lauren Frontz.

**OPINION**

**I. BACKGROUND**

The trial court set the hearing on Petitioner's request for an order of protection for August 13, 2020, ten days after it granted the temporary ex parte order. At that hearing,

Respondent's first attorney requested that the trial court postpone the case until a related criminal harassment matter against him was resolved, asserting among other things Respondent's Fifth Amendment right to remain silent. The trial court granted Respondent's request, entering a bridging order extending the order of protection until September 17, 2020.

Respondent's criminal harassment charge was dismissed on September 14, 2020. As found by the trial court, "on September 17, 2020, the ex parte order of protection was bridged to November 5, 2020. At counsels' request, the parties did not have a hearing. Counsel expressed that, by passing the case, they would have additional time to review phone records and conduct discovery." Five days later, Respondent filed a notice stating that he "has terminated [his] counsel . . . and intends to proceed *pro se* until new counsel is obtained."

On September 25, 2020, Respondent, acting pro se, filed three motions. The first requested "unfettered access to review the subpoenaed phone records of Petitioner and to obatin attorney/client work product in the possession of the court." The second stated that "Respondent is preparing to propound extensive discovery and pleadings regarding the mental and physical health of Petitioner," and asked the court to seal the record in this case. The third motion was "to dissolve Petitioner's ex parte order of protection for lack of good cause." The motions contained a notice setting them for hearing on October 16, 2020.

On October 9, 2020, Petitioner filed a motion for a protective order against Respondent's discovery requests and a motion for continuance of the November 5, 2020 hearing date "[s]o that the Petitioner may have an opportunity to answer any allowed discovery from the Respondent and allow the Respondent to answer any discovery requests from the Petitioner allowed by" the trial court. Respondent filed a response in opposition to these motions, and also asked the trial court to compel Petitioner to answer his discovery requests, vacate the temporary protective order, award him $11,000 in attorney's fees, and order Petitioner to appear and show cause as to why she should not be held in contempt. Attached to Respondent's response was a copy of a complaint filed by him against Petitioner in Knox County Circuit Court, wherein he sued her for malicious prosecution, defamation, false imprisonment, and intentional infliction of emotional distress.

In late October of 2020, both parties hired new counsel. On November 4, 2020, the trial court conferred with new counsel via telephone. The trial court found as follows:

> On November 4, 2020, the Court conducted a phone conference with Steve Sharp, (representing Mr. Hall) and Doug Toppenberg (representing Ms. Frontz). *Both parties were jointly seeking to continue the hearing set the following day. Counsel agreed* that the case would take an estimated four hours a*nd that they would work with the Court's assistant to find a trial day*

*upon which to set the case*.  The Court entered an order continuing the ex parte order of protection to a date "to be determined by counsel."

(Emphasis added).  The trial court entered another bridging order on November 4, 2020 extending the order of protection and stating that "a hearing on the extension of this Order of Protection will be held on . . . to be determined by counsel."

Respondent's second counsel withdrew from representing him on November 23, 2020.  The trial court's order granting the withdrawal states that "[t]his shall not delay any previously determined discovery dates or trial date."  On November 30, 2020, the trial court entered an order denying Respondent's motion to dissolve the protective order, stating that "the Court finds that the issues raised in the motion to dissolve are factual in nature and will be addressed at the trial of this cause."  The trial court also noted that

> Petitioner's motion for continuance was denied and the matter remained upon the November 5, 2020 docket.  Subsequent to this hearing, the November 5, 2020 hearing date *was continued by agreement on November 4, 2020*, and [c]ounsel were directed to be placed upon the Court's trial docket.

(Emphasis added).  In early December, Respondent, acting pro se, filed four additional motions.  On December 1, 2020, Respondent filed a motion to disqualify Petitioner's counsel; he shortly thereafter requested the trial court to disqualify her attorney's entire law firm.  On December 4, 2020, Respondent filed a "motion to set an immediate trial date; or, in the alternative, dissolve the temporary (ex parte) order of protection."

On December 22, 2020, Petitioner filed a motion for an order to Respondent to show cause for why he should not be held in contempt for seven alleged violations of the order of protection.  Petitioner alleged that Respondent directly sent her several emails stating, among other things, the following:

> I don't know what's going on with your phone but read this and call your goddamn lawyers.  I'm starting to get pissed . . .

> You keep seeing people change everything because of me.  The world changes when I get angry.  Why is it so difficult? . . . How many more people should I destroy before you finally get it?

> For you I will destroy worlds.  No one will ever harm you or they will know wrath.  Fuck your attorneys.  Fuck everyone . . .  Stop listening to [your attorney].  I make judges.  I destroyed judges.  [Your attorney] sold you on lies.  He was never anything.  I have much more power and control than he will ever have.

3

Petitioner also alleged that Respondent sent her attorney emails that included the statements, "I have people watching. And I intentionally violated the order [of protection] to forewarn her. I don't care. As long as she's safe. You can send me to jail. . . I will burn this world if someone hurts her."

The trial court found as follows regarding what happened next:

On January 8, 2021, Attorney Darren Berg made his first appearance on behalf of [Respondent]. At the hearing, Mr. Berg informed the Court that he had been retained only two days earlier. *During the hearing, Mr. Berg withdrew* [*Respondent's*] *motion seeking an immediate trial date*. After discussion among the Court and counsel, it was determined that, due to Mr. Berg's recently having been retained, the uncertainty as to which motions were set, the fact that at least one motion was not ripe for hearing due to insufficient notice, and the fact that the show cause order had not been served, the best course of action would be to hear all pending motions on January 29, 2021.

\* \* \*

On January 29, 2021, the Court held a hearing pursuant to its rulings made as part of the hearing held on January 8, 2021. Neither counsel had timely noticed any of the matters they wished to be heard. Both parties had served their notices of hearing by mail, neglecting to add an additional three days as required for notice served by mail. Since neither party would waive the required notice, the Court could not hear the various matters.

\* \* \*

The Court then held a hearing [on February 5, 2021] on the alleged violations and found, beyond a reasonable doubt, that [Respondent] had violated the ex parte order of protection on five separate occasions and sentenced him to jail for a term of ten days for each violation, to be served consecutively. [Respondent] made a motion for release on bond while the contempt finding was appealed. That motion was granted.

The Court then called the underlying order of protection for hearing, at which point [Respondent] conceded that, since the Court had found (beyond a reasonable doubt) that [Respondent] had committed the acts for which he was convicted and that [Petitioner's] petition for an order of protection had been amended to include those allegations, he could not contest that

4

[Petitioner] was entitled to an order of protection. A one-year order of protection was entered.

(Emphasis in original). The trial court indicated in the protective order that "the issue of attorney's fees for the underlying order of protection [is] reserved." Petitioner's counsel filed an affidavit of fees and expenses shortly thereafter. The trial court conducted a hearing on the issue of attorney's fees and expenses on March 19 and 23, 2021. In an extensive and detailed thirteen-page order, the court awarded Petitioner $77,525.75 of her total requested amount of $80,397.25.

## II. ISSUES

Respondent raises the following issues, as restated:

1. Whether the trial court's bridging order of protection entered November 4, 2020, is void for failing to specify a period of time it would remain in effect, and if so, whether Respondent's five counts of indirect criminal contempt for violating the protective order must be vacated.

2. Whether the trial court's "refusal to go forward" with a hearing on the merits of the case on December 11, 2020, should have resulted in termination of the case or dismissal for failure to prosecute.

3. Whether the trial court erred in its award of attorney's fees and expenses to Petitioner.

In her statement of the issues presented, Petitioner requests an award of her attorney's fees on appeal.

## III. STANDARD OF REVIEW

As stated by our Supreme Court,

In a non-jury case such as this one, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo, with no presumption of correctness.

*Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014).

5

"[A] determination of attorney's fees is within the discretion of the trial court." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). "Consequently, a trial court's award of fees will be upheld unless it has abused its discretion, 'meaning that it either applied an incorrect legal standard or reached a clearly unreasonable decision' resulting in an injustice." *House v. Estate of Edmondson*, 245 S.W.3d 372, 378 (Tenn. 2008) (quoting *Kline v. Eyrich*, 69 S.W.3d 197, 203-04 (Tenn. 2002)). "We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision." *Wright*, 337 S.W.3d at 176 (citing *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

## IV. ANALYSIS

### A. Order of Protection and Criminal Contempt

The correctness of the trial court's criminal contempt findings against Respondent is not at issue on appeal. He admits in his brief that he "does not challenge the sufficiency of the evidence supporting the criminal contempt misdemeanor convictions." At the February 5, 2021 hearing, the parties announced an agreement for the trial court to enter an order of protection against Respondent. The following discussion took place:

> THE COURT: The Court accepts the agreement of an agreed order of no contact, no communication, for a period of 11 months and 29 days. Today is February 5th. It will be in effect until February 4th of 2022. The Court is making no findings of fact.
>
> [Petitioner's counsel]: Well, can I interrupt you? You're not making any findings of fact, but they are stipulating that they're not contesting our facts.
>
> THE COURT: It's an agreed order; no contact, no communication. I don't know how to do it otherwise.
>
> [Respondent's counsel]: *We're simply not contesting the facts, Your Honor*.
>
> [Petitioner's counsel]: I would like to have that noted in the order that it is they are not contesting the allegations.
>
> THE COURT: Okay. That would be the whole substance of an agreed order, is they're agreeing for a no contact, no communication going down; that they are saying we agree to it. That's the whole point. If they were contesting it, I would be having a hearing, and I would either grant it or deny it based on the facts and the determination of -- after I hear it.

(Emphasis added).  As can be seen from the above, the trial court's order of protection entered after this hearing was agreed to and has not been contested by Respondent on appeal.

Respondent's argument is summarized in his brief as follows:

The November 4, 2020 Bridging Ex Parte Order of Protection (as well as the September 17, 2020 Bridging Ex Parte Order of Protection) is Void on its Face as it is Devoid of a New Hearing Date Within One Year or any other Period of Time in Violation of the Mandatory Provisions of the Statutes Governing the Same (Nov. 4, 2021); in the alternative, both Bridging Ex Parte Orders of Protection are Void or Voidable Based on a Violation of the Statutorily Required Mandate that Either the Respondent or His Counsel Agree to the Same; Therefore, the Court's Order, Finding Petitioner in Indirect Criminal Contempt of Court and Sentencing Him to Fifty (50) Days in Jail. . . . must be reversed and dismissed with prejudice.

(Capitalization in original).  This argument was never raised by Respondent or presented to the trial court, and so it has been waived for failure to raise it below.  Even if it were not waived, it is without merit because the record shows that each continuance, and the resulting bridging orders, were done either at Respondent's request or with his agreement and acquiescence.

Tennessee Code Annotated section 36-3-605 provides as follows regarding orders of protection:

(a) Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of protection.  An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.

(b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period.  Any ex parte order of protection shall be in effect until the time of the hearing, and, if the hearing

is held within fifteen (15) days of service of such order, the ex parte order shall continue in effect until the entry of any subsequent order of protection issued pursuant to § 36-3-609. If no ex parte order of protection has been issued as of the time of the hearing, and the petitioner has proven the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, the court may, at that time, issue an order of protection for a definite period of time, not to exceed one (1) year.

Tennessee Code Annotated section 36-3-608 adds that "[a]ll orders of protection shall be effective for a fixed period of time, not to exceed one (1) year."

Our Supreme Court, construing a predecessor version of section 605, held "that the ten [currently fifteen-]day hearing requirement[1] is merely a limitation on the duration of the *ex parte* order and not a limitation on jurisdiction," stating:

we find that the ten [currently fifteen-]day requirement modifies or refers solely to the *ex parte* order and not the trial court's jurisdiction. The legislature apparently inserted this requirement to insure a prompt hearing to determine the validity and necessity of the *ex parte* relief. When a trial court fails to set a hearing within ten [now fifteen] days, the *ex parte* order expires and the case assumes the posture of a case where no *ex parte* order of protection has been issued.

*Kite v. Kite*, 22 S.W.3d 803, 806 (Tenn. 1997). In *Luker v. Luker*, 578 S.W.3d 450, 460 (Tenn. Ct. App. 2018), this Court discussed the fifteen-day requirement and the effect of a party's discovery request in an *ex parte* protective order case, stating as follows:

The 15 day limit for *ex parte* orders of protection under the Domestic Abuse Act and *Kite* is, in our judgment, designed to protect a respondent and not a petitioner. As stated by our Supreme Court in *Kite*, "[t]he prompt hearing requirement limits the potential for abuse by protecting respondents from possible ongoing frivolous or retaliatory *ex parte* protective orders." *Kite*, 22 S.W.3d at 806. After all, upon service of an *ex parte* order of protection, a petitioner already has what he or she wants—immediate court ordered protection from the alleged offender. "The legislature apparently inserted this requirement to insure a prompt hearing to determine the validity and necessity of the *ex parte* relief." *Id*. Therefore, the statutory dissolution of that *ex parte* order after 15 days serves to help only a respondent by expediting the matter and allowing him or her to bring a speedy resolution of the petition. We, however, see no barrier under the Domestic Abuse Act to

---

[1] The statute was later amended to increase the ten-day requirement to fifteen days.

8

a respondent, such as in this case, requesting that the hearing be put off for some definite and limited period of time so he or she can request reasonable discovery, subject to the trial court's management, with the proviso that the *ex parte* order of protection remains in place until that hearing. . . . Consistent with the Domestic Abuse Act and *Kite*, it is only a respondent who has the ability to request that the hearing be postponed to allow for discovery with the *ex parte* order of protection remaining in effect. A petitioner cannot extend the *ex parte* order of protection beyond the 15 day limit by requesting discovery. However, if the 15 day period is extended and the *ex parte* order remains in effect because of a request for discovery by a respondent, a petitioner likewise is allowed reasonable discovery as determined by a trial court in its discretion.

*Luker*, 578 S.W.3d at 460 (brackets in original).

In *Swonger v. Swonger*, No. E2015-01130-COA-R3-CV, 2016 WL 1730732 (Tenn. Ct. App. Apr. 28, 2016), this Court addressed a situation where the trial court entered a default judgment granting a permanent, open-ended order of protection against a respondent. We concluded that "the trial court lacked statutory authority to issue a permanent, open-ended order of protection in this case," stating that "[p]ursuant to this Court's construction of this statutory section [Tenn. Code Ann. § 36-3-605,] at a hearing following entry of an ex parte order of protection, a trial court has only two options: (1) to dissolve the ex parte order of protection; or (2) to extend the order of protection for a definite period not to exceed one year." *Swonger*, 2016 WL 1730732, at *5.

Respondent cites the above-discussed authorities to argue on appeal that the November 4, 2020 bridging order was void on its face because, he asserts, the trial court's statement that "a hearing on the extension of this Order of Protection will be held on . . . to be determined by counsel" renders it a "permanent, open-ended order of protection." Respondent did not raise this objection with the trial court. There is no indication in the record that he ever argued that the bridging order was void for any reason. The jurisdiction of this Court is "appellate only," *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (quoting Tenn. Code Ann. § 16-4-108(a)(1)), and "[a]ppellate jurisdiction necessarily implies that the issue has been formulated and passed upon by the trial court." *Houston v. Scott*, No. E2010-01660-COA-R3-CV, 2012 WL 121104, at *5 (Tenn. Ct. App. Jan. 17, 2012). Consequently, "[u]nder Tennessee law, issues raised for the first time on appeal are waived." *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996).

Moreover, the trial court entered several orders expressly memorializing and noting Respondent's agreement to the extensions of time and bridging orders. Regarding its telephonic conference on November 4, 2020, the trial court found that "[b]oth parties were jointly seeking to continue the hearing set the following day. Counsel agreed that the case

9

would take an estimated four hours and that they would work with the Court's assistant to find a trial day upon which to set the case." In its order denying Petitioner's request for a continuance, the trial court stated, "the November 5, 2020 hearing date was continued by agreement on November 4, 2020." In a third order, the court noted that "[o]n January 8, 2021, Attorney Darren Berg made his first appearance on behalf of [Respondent]. . . . During the hearing, Mr. Berg withdrew [Respondent's] motion seeking an immediate trial date." Respondent's agreement and acquiescence to the entry of the bridging orders is thus well documented and established in the technical record.

In *Hall v. Hall*, another case cited and relied upon by Respondent, the Court addressed an *ex parte* order of protection extended by a bridging order and the trial court's apparent failure to hold a hearing within the time allotted by statute, stating as follows:

> The 2005 *ex parte* order of protection was extended once through an agreed bridging order entered on September 15, 2005, with an agreed hearing date set for November 17, 2005. The record contains no indication of a November 17, 2005 hearing, and by statute, the 2005 *ex parte* order would have expired on that hearing date *without further agreement by the parties* or demonstrated proof of Father's allegations.

*Hall v. Hall*, No. E2013-02227-COA-R3-CV, 2014 WL 4536650, at *1 (Tenn. Ct. App. Sept. 15, 2014) (emphasis added). The clear implication of the above statement is that there is no problem with the parties agreeing to extend the time for an *ex parte* protective order. Contrary to the situation in *Hall*, in this case the trial court did not fail to meet the time requirements imposed by the applicable statutory scheme, nor did the court act in any dilatory way at all.

Respondent also argues on appeal that the trial court should have dismissed this action with prejudice for failure to prosecute, despite his admission that he never asked the trial court for such relief. This argument is similarly entirely without merit.

## B. Award of Attorney's Fees

The trial court's award to Petitioner of $77,525.75 in attorney's fees is authorized by Tenn. Code Ann. § 36-3-617(a)(1), which provides in pertinent part:

> Notwithstanding any other law to the contrary, no domestic abuse victim . . . shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order . . . . If the court, after the hearing on the petition, issues or extends an

> order of protection, all court costs, filing fees, litigation taxes and attorney
> fees shall be assessed against the respondent.

Respondent's argument that the attorney's fees award was unwarranted is grounded in his assertion that "no hearing was held on the order of protection and the trial court made no findings of fact on the underlying order of protection." But there was a hearing. It occurred on February 5, 2021, and the transcript is in the record. The trial court stated that "[t]he Court . . . called the underlying order of protection for hearing, at which point [Respondent] conceded that, since the Court had found (beyond a reasonable doubt) that [Respondent] had committed the acts for which he was convicted and that [Petitioner's] petition for an order of protection had been amended to include those allegations, he could not contest that [Petitioner] was entitled to an order of protection." The hearing was short because Respondent agreed to the protective order and stipulated to the facts as alleged by Petitioner. Because there was a hearing that resulted in the issuance or extension of an order of protection, the trial court correctly applied the mandate of Tenn. Code Ann. § 36-3-617(a)(1) in awarding attorney's fees.

Respondent briefly states, without elaboration or argument, that the award of fees was excessive. The trial court heard and considered this issue at length in a hearing lasting two days. Respondent had the opportunity to fully explore the reasonableness of the fee request and supporting proof, including cross-examining Petitioner's counsel. In its order granting $77,525.75 of the requested $80,397.25 in fees, the trial court aptly stated that "[t]he case was quite prolonged, and a timeline of events within the case is necessary to establish the length and complexity of the case." The court then recited seven pages of procedural history, in an apparent attempt to explain how what should have been a relatively simple order of protection case resulted in more than eighty thousand dollars in legal fees charged to Petitioner. Our distillation of this history in Section I above does not include a number of other issues and skirmishes not directly relevant to the issues presented on appeal.

It is apparent that the trial court carefully considered the attorney's fees affidavit in painstakingly granular detail, applying the appropriate factors in considering the reasonableness of the fees. The court disallowed some eighteen specific line items in the affidavit and timekeeping records for time expended that it found to be inappropriate or non-compensable. We find no abuse of discretion in the trial court's award of attorney's fees and costs.

Petitioner asks for attorney's fees on appeal. In *New v. Dumitrache*, 604 S.W.3d 1, 21-22 (Tenn. 2020), the Supreme Court interpreted and applied Tenn. Code Ann. § 36-3-617, stating:

One means the General Assembly chose to ensure that victims of domestic abuse receive "enhanced protection" is to enact a statute that broadly declares that domestic abuse victims should not be required to bear the financial burdens of legal action made necessary by a domestic abuse perpetrator. . . . [W]e agree with the Court of Appeals that section 36-3-617 clearly authorizes awarding attorney's fees and costs incurred in obtaining an order of protection or the extension of an order of protection, or in defending an appeal involving the issuance or extension of an order of protection.

We also agree with the Court of Appeals that . . . section 36-3-617(a)(1) does not authorize an award of attorney's fees for matters unrelated to obtaining an order of protection or an extension of an order of protection or defending an appeal involving the issuance or extension of an order of protection. *Reynolds v. Reynolds*, No. M2013-01912-COA-R3-CV, 2014 WL 7151596, at *10-11 (Tenn. Ct. App. Dec. 12, 2014); *Rodgers v. Rodgers*, No. E2011-02190-COA-R3-CV, 2012 WL 3900791, at *13 (Tenn. Ct. App. Sept. 10, 2012). For example, in *Rodgers v. Rodgers*, the Court of Appeals explained that section 36-3-617(a)(1) authorized an award of attorney's fees on appeal incurred in defending the extension of an order of protection but not attorney's fees on appeal incurred for other unrelated issues. *Rodgers*, 2012 WL 3900791, at *13. Similarly, in *Reynolds v. Reynolds*, the Court of Appeals held that section 36-3-617(a)(1) did not authorize an award of attorney's fees incurred in successfully prosecuting a petition for criminal contempt alleging a willful violation of an order of protection. 2014 WL 7151596, at *10-11.

In this case, the issues on appeal involve defending the validity of an order of protection. As did the Supreme Court in *New*, we conclude that Petitioner is entitled to an award of her appellate attorney's fees.

## V. CONCLUSION

The judgment of the trial court is affirmed. Upon remand, the trial court shall enter an order granting Petitioner her reasonable attorney's fees incurred for this appeal. Costs on appeal are assessed to the appellant, Tristan J. Hall, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

12